IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2018
_____


CURTIS LEE JOHNSON,

                                        Petitioner-Appellant,

                        versus

JAMES A. COLLINS, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                        Respondent-Appellee.

_____

On Application for Certificate of Probable Cause
From the United States District Court
For the Southern District of Texas

_____
(June 23, 1992)

Before POLITZ, Chief Judge, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Johnson asks this court for a certificate of probable cause to
appeal from the district court's denial of his petition for a writ
of habeas corpus.  For the reasons set out below, his request is
DENIED.

I

On September 24, 1983, Curtis Lee Johnson--carrying a loaded
pistol--and a companion entered the open rear window of the second
story apartment of Murray Dale Sweat.  While burglarizing it, they
heard people coming up the stairs to the apartment.  Instead of

fleeing, the two remained, and when two people entered, Johnson pointed the gun at them and told them not to move.  One of the men turned and ran out the door, but the other, Sweat, lunged at Johnson and grabbed his legs.  Johnson kicked Sweat, who fell over backwards, and then--while Sweat was lying on his back--Johnson shot and killed him.

## II

Johnson was charged with capital murder and on December 15, 1983, was found guilty by a jury.  At the punishment phase of the trial, the jury answered affirmatively the special issues under the former article 37.071 of the Texas Code of Criminal Procedure.[1] The trial court, accordingly, sentenced Johnson to the death penalty.  On October 23, 1985, the Texas Court of Criminal Appeals

---

[1]At the time of Johnson's offense, the Texas law provided:
   (b)On conclusion of the presentation of the
   evidence [at the sentencing proceeding], the
   court shall submit the following issues to
   the jury:
   (1)whether the conduct of the defendant that
   caused the death of the deceased was
   committed deliberately and with the
   reasonable expectation that the death of the
   deceased or another would result;
   (2)whether there is a probability that the
   defendant would commit criminal acts of
   violence that would constitute a continuing
   threat to society; and
   (3)if raised by the evidence, whether the
   conduct of the defendant in killing the
   deceased was unreasonable in response to the
   provocation, if any, by the deceased.
   . . . .
   (e)If the jury returns an affirmative finding
   on each issue submitted under this article,
   the court shall sentence the defendant to
   death.
Vernon's Ann. Texas C.C.P. art. 37.071 (1981).  The article was amended in 1985 and 1991.

affirmed the conviction and sentence. Johnson v. State, 698 S.W.2d 154 (Tex.Crim.App. 1985).

On January 2, 1986, the trial court scheduled Johnson's execution for April 7, 1986. On April 3, 1986, Johnson filed in the United States Supreme Court a Motion for Permission to File Late Petition for Writ of Certiorari to the Texas Court of Criminal Appeals and Motion for Stay of Execution. On April 4, 1986, Johnson also filed a Petition for Stay of Execution and Writ of Habeas Corpus in federal district court. The district court granted the stay of execution "pending further order of this Court" and dismissed the petition on April 28, 1986. On April 7, 1986, the Supreme Court granted a stay of execution pending the filing and disposition of a writ for certiorari. On October 6, 1986, the Supreme Court denied Johnson's petition for writ of certiorari, thus vacating its stay of execution. Johnson v. Texas, 479 U.S. 871 (1986).

On July 29, 1987, the trial court scheduled Johnson's execution for September 16, 1987. On August 4, 1987, Johnson filed an application for writ of habeas corpus in state court, and, after the trial court modified the execution date, a supplemental application on October 14, 1987. Both applications were denied. Ex Parte Johnson, Application No. 15,840-02 (Tex.Crim.App., October 19, 1987) & Application No. 15,840-03 (Tex.Crim.App., October 26, 1987).

On October 21, 1987, Johnson filed a petition for writ of habeas corpus in United States District Court for the Southern

District of Texas, which granted a stay of execution on October 27, 1987.  An evidentiary hearing before a magistrate judge followed and on December 2, 1991, the district court entered its order adopting the report and recommendation of the magistrate judge in its entirety (except conclusion of law 5 which was rejected and for which the magistrate judge's alternative conclusion of law was adopted).  In accordance therewith, the district court vacated the October 1987 stay of execution, denied Johnson's petition for writ of habeas corpus, and denied Johnson a certificate of probable cause to appeal.  These proceedings followed.

### III

Johnson applies to us for a certificate of probable cause after denial of a certificate by the district court.  The parties have submitted briefs on the merits.  We have jurisdiction in this case in accordance with 28 U.S.C. §§ 1291, 2253.

> A certificate of probable cause to appeal will be granted if the applicant can make "a substantial showing of the denial of a federal right."
>> A "substantial showing" of a denial of a federal right means that "the issues are debatable among jurists of reason, that a court could resolve the issues [in a different manner]; or that the questions are `adequate to deserve encouragement to proceed further.'" The severity of the penalty in a death penalty case "is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate."

Clark v. Collins, 956 F.2d 68, 71 (5th Cir. 1992) (citing Buxton v. Collins, 925 F.2d 816, 819 (5th Cir. 1991) (internal quotes and modifications as in original; citations omitted)).  We turn now to

4

the issues raised by Johnson in his petition so that we may determine if they meet this standard.

A

(1)

Johnson first complains that the district court "erred in adopting the finding of the magistrate judge that there was sufficient evidence to support the affirmative jury finding that [Johnson] acted deliberately when he shot Murray Dale Sweat." We are not persuaded.

In evaluating the sufficiency of the evidence in a federal habeas corpus case, we must decide whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 320 (1979) (emphasis in original). In "viewing the evidence," we must consider "<u>all of the evidence</u> . . . in the light most favorable to the prosecution." <u>Id</u>. (emphasis in original). We also consider all reasonable inferences to be drawn from the evidence. <u>Id</u>. Sufficiency of the evidence is determined based upon the substantive elements of the criminal offense as defined by state law. <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).

Under Texas law, "deliberately" is not a term of art and is not defined in the trial judge's instructions to the jury. Instead, it "is to be taken and understood in its normal use and common language." <u>Carter v. State</u>, 717 S.W.2d 60, 67

5

(Tex.Crim.App. 1986).  The state does not have to show that the defendant "carefully weighed or considered or carefully studied the situation <u>immediately prior</u> to killing the deceased in order for the jury to" decide that the defendant acted "deliberately"; instead, the circumstances of the crime may be sufficient to support a finding of deliberateness.  <u>Id</u>. (emphasis in original). "Deliberately" is defined as "with careful consideration or deliberation; circumspectly; not hastily or rashly; slowly; as, a resolution <u>deliberately</u> formed."  WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE (William Collins Publisher; 2d ed. 1980).  The Texas Court of Criminal Appeals has held:

> [W]hile from the act of suddenly and impulsively firing a gun can be found the intent to cause the death, such action may not necessarily show that the act was deliberate.  To find the act of deliberateness, <u>there must be the moment of deliberation and the determination on the part of the actor to kill.  Such determination must necessarily be found from the totality of the circumstances of the individual case.</u>

<u>Cannon v. State</u>, 691 S.W.2d 664, 677 (Tex.Crim.App. 1985).

In the instant case, the evidence before the jury showed the following:  Johnson consciously decided to take a loaded gun with him when he went to commit a burglary of an apartment in which people were living.  When he heard people coming to the apartment, Johnson made another conscious decision--to remain in the apartment rather than flee.  When Sweat entered the apartment, Johnson chose to confront him rather than try to hide or leave. In confronting Sweat, Johnson again made a conscious decision, i.e., to point the loaded gun at Sweat.  The evidence revealed that, after a struggle, Johnson shot Sweat at a time when Sweat was lying on his back

6

several feet away from Johnson--a position in which he could pose no threat to Johnson. From these facts, the jury rationally could have concluded that there was the "moment of deliberation and the determination . . . to kill" and, thus, that Johnson acted "deliberately." Cannon, 691 S.W.2d at 677. We, therefore, find no merit in Johnson's first claim of error.[2]

(2)

Our conclusion that there was sufficient evidence from which the jury could rationally have found that Johnson acted deliberately when he shot Sweat leads to a quick conclusion as to Johnson's second assignment of error. He contends that his counsel were ineffective because the issue of sufficiency of the evidence to support a finding of deliberateness was not raised on direct appeal.

Even if we assume that Johnson's counsel failed to "function[] as the `counsel' guaranteed by the Sixth Amendment," by failing to raise sufficiency of the evidence on appeal, the fact remains that the evidence was clearly sufficient to support a finding of deliberateness. Therefore, there was no prejudice to Johnson from

---

[2]In his "deliberateness" argument, Johnson states that the evidence showed that on other occasions he carried a gun when committing crimes and never shot at anyone, even though he pointed the gun. If this is an argument that because Johnson, on other occasions, had not shot other people, he did not "deliberately" shoot Sweat, then it goes astray. The issue is not whether Johnson acted in conformity with his behavior on other occasions and, thus, did not shoot Sweat; the issue is whether Johnson acted deliberately on the occasion when, admittedly, he did shoot Sweat. The jury considered that question based on all the evidence before it and reached a conclusion which it rationally could have reached.

7

counsel's failure.  Because his claim of ineffectiveness of counsel fails the "prejudice" prong of the Strickland test,  we find no merit to it.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

(3)

Johnson next claims that his trial counsel were ineffective because those lawyers failed to call any witnesses on his behalf at the punishment phase of his trial.  The magistrate judge found after an evidentiary hearing where trial counsel and witnesses for Johnson testified, that:  1) "Counsel were not incompetent in failing to obtain the seven witnesses now claimed to have been readily accessible at the time;" and 2) "Johnson [has not] proved that his defense was prejudiced by the failure to call his seven relatives as witnesses."  Johnson v. Collins, No. C.A. H-87-3284, Memorandum and Recommendation at 7 (S.D. Tex. 1991).

Although Johnson contends that one of his trial counsel was untruthful about filings made with the Texas court, was sanctioned by the Texas Court of Criminal Appeals for failure timely to perform his duties and was not truthful in his answers, the magistrate made his findings based, in part, upon a determination of the credibility of the witnesses after their appearance before him.  These findings included, as a predicate to the magistrate judge's finding that Johnson's counsel were not incompetent, a factual finding that trial counsel had made efforts to find witnesses and that both Johnson and his mother had been uncooperative.

We can overturn findings of fact only if a review of all of

8

the evidence leaves us with "the definite and firm conviction that a mistake has been committed." Bull's Corner Restaurant v. Director, Federal Emergency Mgmt. Agcy., 759 F.2d 500, 502-03 (5th Cir. 1985) (citation omitted). When findings of fact are based on credibility determinations regarding witnesses, we must show even more deference to the trial court's findings. Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985).

In this case, our review of the record does not convince us that "a mistake has been committed," much less the even greater conviction required to overturn the magistrate judge's findings of fact. We, therefore, conclude because Johnson's trial counsel made a good faith effort to locate mitigation witnesses--which was frustrated by noncooperation on the part of the defendant and his mother--that trial counsel was not constitutionally ineffective.

Additionally, even if we did not reach this conclusion, we agree with the magistrate judge (and the district court) that the lack of mitigation witnesses did not prejudice Johnson. None of the proposed witnesses had even seen Johnson for several years. They said they would have testified that Johnson was "slow" and that, therefore, he did not deliberately shoot Sweat. Additionally, they would have testified that, in their opinion, Johnson did not pose a future danger. We agree with the magistrate judge that "[i]n view of the calculated nature of the crime and Johnson's prior and subsequent criminal history, including two other aggravated robberies, there is little chance the jury would have been impressed by the testimony of . . . highly partisan

9

relative witnesses."  Memorandum and Recommendation at 7.

(4)

Johnson next complains that the district court erred in concluding that Texas's procedure--at the punishment phase of the trial limiting the jury to answering the three special issues-- allowed the jury to consider and give effect to "all mitigating evidence."  Although admitting that he introduced no mitigating evidence, Johnson contends that "a juror . . . might reasonably have believed that [he] should not be sentenced to death because of the relatively non-aggravated circumstances of the murder . . . despite having found that the State had proven affirmatively the three special issues."  He contends that the special issues "provided no vehicle by which a juror could give effect to such a reasoned moral response to the circumstances of the crime."  He cites Penry v. Lynaugh, 109 S.Ct. 2934, 2951 (1989), as supporting the proposition that "the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime in order to ensure reliability in the determination that death is the appropriate punishment in a specific case."

Even if we assume that Johnson is correct in his reading of Penry, we still conclude that there is no merit to this claim of error.  Each capital defendant is entitled to an "individualized assessment of the appropriateness of the death penalty" based on the jury's "reasoned moral response to the defendant's background, character, and crime."  Penry, 109 S.Ct. at 2947 (emphasis in

10

original; citations and internal quotations omitted). To the extent, however, that Johnson's argument is that the jury should be allowed to avoid answering the special issues affirmatively because they feel sympathy for Johnson, that argument has been discredited by Saffle v. Parks, 110 S.Ct. 1257, 1279 (1990), in which Justice Kennedy, writing for the majority, pointed out that the Supreme Court cases do not require such an instruction. California v. Brown, 479 U.S. 538, 542 (1987) held that an instruction to the jury not to base its sentencing recommendation on, inter alia, sympathy, did not violate the Eighth Amendment.

To the extent that Johnson's argument is simply that the jury could not avoid answering a special issue affirmatively, even though it had reached a reasoned moral conclusion that he was not worthy of the death penalty, we disagree. Johnson asserts that his crime was "non-aggravated" (by which we assume Johnson refers to the absence of torture, mutilation, multiple wounds, etc.). We reject his characterization of this murder. Even if Johnson's crime could be said to be non-aggravated, Johnson's moral culpability was relevant to and could have been considered in answering the future dangerousness issue. Furthermore, moral culpability under such circumstances could have been considered under the first or third special issues. In Johnson's case, the jury could have concluded that Johnson did not act deliberately, but was provoked by Sweat's lunge at him into reflexively firing a single shot after which he escaped as quickly as possible. This conclusion would have allowed the jury to answer either the

11

deliberateness or provocation issues negatively.  We find no merit in this assignment of error.

(5)

Johnson next contends that his trial counsel was ineffective because "[r]easonably effective trial counsel would have attempted to question each prospective juror during voir dire regarding the ability of the prospective juror to vote "no" on at least one special issue, even though the State had proven the issue . . . beyond a reasonable doubt, if the circumstances of the offense were such that the death penalty should not be assessed."  He further contends that counsel should have asked the trial court, both at voir dire and before the jury retired to consider its verdict, to instruct the jury "that at least one special issue must be answered negatively if the circumstances of the offense were such that the death penalty should not be assessed."

The magistrate judge points out that the larger part of one of Johnson's trial counsel's "final argument in the punishment phase . . . urged the jury to engage in an act of nullification because the death penalty was morally wrong and the jury should return a life sentence."  Furthermore, to the extent that Johnson argues that the jury should have been instructed it could answer one or more special issue negatively, regardless of mitigating evidence, that is not the law in Texas.  A prospective juror who states he or she would answer negatively to a special issue, even though the state had proven it beyond a reasonable doubt, is disqualified from service.  Wainwright v. Witt, 469 U.S. 412, 422-24 (1985).  Neither

12

can such an argument withstand the Supreme Court's condemnation of "uncontrolled discretion of judges or juries" in administration of the death penalty in Furman v. Georgia, 408 U.S. 238, 253 (1972).

In short, Johnson does not show that his trial counsel failed either prong of the Strickland test in connection with this assignment of error. First, trial counsel's performances were not so deficient that they failed to meet the constitutional standard. Strickland, 466 U.S. at 687. Second, Johnson has not demonstrated prejudice as a result of counsel's alleged ineffectiveness in this respect because had counsel sought such instructions, they justifiably would have been refused in accordance with Witt and Furman. Strickland, 466 U.S. at 687. We, therefore, find no merit in Johnson's argument concerning this issue.

Although we have addressed Johnson's claims as they were presented to us, we think it important to observe that we could have dispensed with these arguments with greater dispatch: The claims he makes in regard to the procedure under Texas's death penalty statute (discussed above in sections III (A) (4) & (5)) fly into the face of Jurek v. Texas, 428 U.S. 262 (1976), and Franklin v. Lynaugh, 487 U.S. 164 (1988), which have upheld the Texas statutes as constitutional except in limited circumstances explicated in Penry v. Lynaugh, 109 S.Ct. 2934, 2947-51 (1989). Because this record is devoid of any Penry type evidence, these attacks on the Texas statute are meritless.

(6)

Finally, Johnson argues that "the district court erred . . .

13

in finding . . . that [he] was not prejudiced by the error of counsel during voir dire in instructing two prospective jurors, both of whom became members of the jury which convicted and sentenced [him], that `deliberately' means much the same as `intentionally.'"[3]  Johnson contends that "[b]y instructing two

[3]We understand Johnson to refer to the examinations during voir dire of Charles Allen White and Frank Alan Cain by Benjamin Durant, one of his trial counsel.

In Durant's examination of Charles Allen White, the following exchange occurred:

Q. . . . Now, let me give you a fact situation.  Would you agree with me that this word "deliberately" and the word "intentionally," mean basically the same thing?

A.  Well, no, not really.

Q.  Okay.  What do you see the difference in them?

A.  I see deliberately is doing the act right then and there, you know, just taking it and doing it; and intentionally is walking in the door with the intent of doing it.

Q.  Okay.  Let me say this.  When you say deliberately means doing it and knowing you're doing it?

A.  Right.

Q.  And wanting to do it?

A.  That's right.

Q.  That's deliberately?

A.  That's what I said.

. . .

A.  But it [whether or not something was committed deliberately] would have to be proven to me.

Q.  Let me ask you this:  It has to be proven to you beyond a reasonable doubt?

A.  Absolutely.

14

. . .

Q.  If you have a reasonable doubt as to whether or not something was committed deliberately, can you answer that question [the first special issue] "no"?

A.  If I have got a reasonable doubt, yes, sir, I could.

State Trial Record Vol. 12, pp. 38-40.  In Durant's examination of Frank Alan Cain, we find the following:

Q.  I'm going to state the word "intentional" or "deliberate," I think they can possibly be two interchangeable words taking a fact situation into account.

. . .

Q.  Let me give you an example of what I'm talking about.  Suppose two men--suppose two men are fighting. Let's say if--let me give you a little background of that.  Let's say one man is burglarizing another man's car, broken into this man's car; and then the man comes out and sees the fellow inside his car, the man that owns the car.  So he attacks the burglar and they're fighting, and during the course of the fight a gun comes up from somewhere; and the two are struggling over the gun.  And the gun goes off and shoots and kills the man who owns the car.

Do you follow what I'm saying?

A.  Yeah. Right.

Q.  Now, this would be a capital murder situation; but there may be a question, because the two men are struggling over a gun as to whether or not the burglar intentionally or deliberately shot the man that owned the car.

Do you follow what I'm saying?

A.  He just--just intentionally kills someone.  Right. I understand what you are saying.

Q.  But what I'm saying, there may be--there may be a possibility that because of the fact--quite naturally if he just walked up to him and shot him in cold-blood,

15

jurors that the words mean much the same, defense counsel lessened the burden on the state," and that "had defense counsel not instructed two members of the jury that `deliberately' means much the same as `intentionally,' the outcome with respect to Special Issue No. 1 would have been different."

One prospective juror, Charles Allen White stated that "deliberate" and "intentional" had different meanings to him. Although he initially appeared to confuse the meanings, as the questioning progressed, he seemed to have corrected his initial confusion. He responded to counsel's questions in such a way that he could have been understood to see "deliberate" as requiring conscious thought and choice to engage in an act, over and above merely purposeful conduct.

Frank Alan Cain, contrary to Johnson's argument, clearly

---

obviously he did that intentionally and deliberately.

A.  Right.

Q.  Because the two of them are struggling, there is a possibility that the burglar didn't intend to do it. Do you follow what I'm saying?

A.  Right.

Q.  He killed the man because during the struggling the gun goes off, whatever the case might be.  Because of that particular fact situation--don't misunderstand me. I'm not trying to lock into any particular fact.  I'm giving you that as a hypothetical example on how a person can be killed during the course of a felony being committed.  It might possibly not be a deliberate act, you see.

A.  Right.

State Trial Record Vol. 12, pp. 196-198.

16

demonstrated that he understood the difference between "deliberate" and "intentional." First, he made no response to Durant's assertion that the two were "interchangeable." He then responded correctly to Durant's questions:

> Q. Now, this would be a capital murder situation; but there may be a question, because the two men are struggling over a gun as to whether or not the burglar intentionally <u>or</u> deliberately shot the man that owned the car.
>
> Do you follow what I'm saying?
>
> A. He just--just intentionally kills someone. Right. I understand what you are saying.

He then went on and responded correctly as Durant pursued the fact situation he had outlined:

> Q. . . . if he just walked up to him and shot him in <u>cold blood</u>, obviously he did that intentionally <u>and deliberately</u>.
>
> A. Right.

He correctly responded as Durant distinguished "intentional" and "deliberate."

> Q. Because the two of them are struggling, there is a possibility that the burglar didn't intend to do it. . . .
>
> A. Right.
>
> Q. . . . It possibly might not be a deliberate act, you see.
>
> A. Right.

The magistrate judge, who reviewed the record and heard the testimony of Durant, found as fact that "Mr. Durant did not mislead members of the jury into the belief that `intentionally' and `deliberately' meant the same thing and that an affirmative finding

17

must automatically be made on Special Issue No. 1 [after a finding of guilt in the guilt/innocence phase]." Report and Recommendation at 21. He concluded that Johnson was not prejudiced by Durant's conduct of voir dire, id. at 13, and concluded as a matter of law that Johnson had received effective assistance of counsel "under the standards of Strickland v. Washington, 466 U.S. 668 (1984)." Id. at 21.

Strickland instructs us that in reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," must avoid distortion by hindsight, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).

Our review of the record does not leave us with "the definite and firm conviction" that the magistrate judge was mistaken concerning the belief of the jurors, and, therefore, we cannot overturn this finding of fact. Bull's Corner Restaurant, 759 F.2d at 502-03. Thus, we cannot agree with Johnson that the jurors were so confused about the difference between "deliberate" and "intentional" that the verdict on special issue one was affected. Furthermore, we agree with the court below that Johnson received "effective assistance of counsel under the standards of Strickland v. Washington."

This contention of error is without merit.

IV

Having reviewed Johnson's assignments of error and having

18

found them without merit, we conclude that he is not entitled to a certificate of probable cause.  Although we have resolved one issue, that of the effectiveness of counsel at voir dire, in a different theoretical manner than did the court below, we do not consider that resolution to be "in a different manner," i.e., coming to a contrary conclusion such that "encouragement to proceed further" is deserved.  The application for a certificate of probable cause is, therefore,

D E N I E D.