United States Court of Appeals,

Fifth Circuit.

No. 93-7660.

John S. JORDAN, Petitioner-Appellant,

v.

Edward HARGETT, Superintendent, Mississippi State Penitentiary, et al., Respondents-Appellees.

Oct. 7, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before REAVLEY, DeMOSS and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:

John Jordan filed a petition for writ of habeas corpus asserting that his constitutional right to testify had been violated in the course of his state court trial for rape. The district court denied the petition. We reverse and remand.

BACKGROUND

In 1987 Jordan was tried and convicted in Mississippi state court for the rape of G.R. After exhausting his state remedies, he sought federal habeas corpus relief. He alleged that he was denied his right to testify on his own behalf at trial. A magistrate judge conducted an evidentiary hearing on this claim. Jordan testified at the hearing that he informed his attorney prior to trial and during each trial recess that he wished to testify. In particular, he wished to testify that he was visiting relatives in Dallas at the time of the rape. He further wanted to testify to refute the victim's description of him as the rapist, to point out

1

that the fingerprints taken from the scene were not his, and to show that the jacket taken from his house in 1986 by the sheriff was different from the jacket the victim described the rapist as wearing. Jordan stated that his lawyer told him he could not testify because such testimony might result in the jury learning of Jordan's 1976 conviction for child molestation. Jordan's wife and daughter corroborated his testimony. The magistrate found the testimony of the witnesses believable and uncontradicted. Jordan's attorney from the state trial could not be located and did not testify at the habeas hearing.

The magistrate recommended that habeas corpus relief be granted. After hearing the testimony, the magistrate made factual findings that Jordan repeatedly requested to testify at trial, that his counsel's decision not to call him was made against his wishes, that Jordan understood that he had a right to testify, and that he never voluntarily and intentionally waived that right.

The district court rejected the magistrate's recommendation and denied the request for habeas corpus relief. The court concluded that Jordan had waived his right to testify by voluntarily choosing not to testify on the advice of his attorney, and by failing to assert his right to testify either through his attorney or on his own during the state trial.

DISCUSSION

A criminal defendant has a fundamental constitutional right to testify on his own behalf. *Rock v. Arkansas,* 483 U.S. 44, 49-52, 107 S.Ct. 2704, 2708-10, 97 L.Ed.2d 37 (1987). This right is

2

granted to the defendant personally and not to his counsel. *Id.* at 51, 107 S.Ct. at 2709. *See also United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.) (on rehearing en banc) ("We now reaffirm that a criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."), *cert. denied,* --- U.S. ----, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

A. *Whether a Constitutional Violation Occurred*

A defendant may of course waive his right to testify, and frequently does so on the advice of counsel. We would find no violation of the right to testify if Jordan acquiesced during trial to his attorney's recommendation that he not testify and later decided that he should have testified. Instead, a violation of this right only occurred if the "final decision that [defendant] would not testify was made against his will. In other words, we must determine whether [defendant] made a knowing, voluntary and intelligent waiver of his right to testify." *United States v. Teague,* 908 F.2d 752, 759 (11th Cir.1990), *rehearing granted,* 953 F.2d 1525 (11th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

Based on his report and recommendation we conclude that the magistrate fully understood the relevant factual inquiry. He concluded that Jordan had repeatedly asked to testify, had never voluntarily waived his right to testify, and that "the decision that John Jordan would not testify was made against his wishes."

3

These findings are findings of fact, and are based on the magistrate's view of the credibility of the witnesses he observed.

The district court rejected the magistrate's findings and recommendation. It relied in part on testimony from Jordan in the civil case G.R. brought against Jordan, which suggests that Jordan chose not to testify in the prior criminal trial on the advice of counsel. This evidence was offered by the State after the magistrate issued his report and recommendation.

We have often stated, in cases where the district court *adopts* the fact findings of a magistrate who conducted an evidentiary hearing, that on appeal we should defer to such findings unless clearly erroneous.[1] The district court, however, is not so limited it its review. Under 28 U.S.C. § 636(b)(1)(C), which governs district court review of a magistrate's findings of fact and recommendations for the disposition of applications for post-conviction relief:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

*See also Louis v. Blackburn,* 630 F.2d 1105, 1110 (5th Cir.1980)

---

[1]*E.g., Johnson v. Collins,* 964 F.2d 1527, 1536 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 4, 120 L.Ed.2d 933 (1992); *McInerney v. Puckett,* 919 F.2d 350, 352 (5th Cir.1990); *Meyer v. Estelle,* 621 F.2d 769, 775 (5th Cir.1980); *Parnell v. Wainwright,* 464 F.2d 735, 737 n. 1 (5th Cir.1972) ("The magistrate's findings of fact receive the imprimatur of Rule 52(a) by the district court's adoption of those findings as its own.").

("The district judge, in his decision whether to reject or accept the magistrate's recommendations, is not limited to a clearly erroneous standard as we are in our appellate review of facts found by the district courts."); *Tijerina v. Estelle,* 692 F.2d 3, 5 (5th Cir.1982) ("Under the Federal Magistrate's Act, the district court may give to the magistrate's proposed findings of fact and recommendations "... such weight as [their] merit commands and the sound discretion of the judge warrants.' ") (quoting *Mathews v. Weber,* 423 U.S. 261, 273, 96 S.Ct. 549, 556, 46 L.Ed.2d 483 (1976)).

While the statute, by its terms, grants the district court broad discretion to accept or reject a magistrate's fact findings, we have placed some limits on that discretion. In particular, we have limited district court discretion to *reject* a fact finding of the magistrate where (1) the finding is based on the credibility of the witnesses the magistrate heard, and (2) the finding is dispositive of an application for post-conviction relief involving the constitutional rights of a criminal defendant. In *Blackburn* we held that in such circumstances the district judge cannot reject the finding without personally hearing live testimony from the witnesses whose testimony is in issue. We explained:

> One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses. The Supreme Court has emphasized, in cases that involve the constitutional rights of criminal defendants, that factual findings may not be made by someone who decides on the basis of a cold record without the opportunity to hear and observe the witnesses in order to determine their credibility.

5

\* \* \* \* \* \*

> If the district judge doubts the credibility determination of
> the magistrate, only by hearing the testimony himself does he
> have an adequate basis on which to base his decision.

\* \* \* \* \* \*

> In order to adequately determine the credibility of a witness
> as to such constitutional issues, the fact finder must observe
> the witness.  This may be accomplished either by the district
> judge accepting the determination of the magistrate after
> reading the record, or by rejecting the magistrates's decision
> and coming to an independent decision after hearing the
> testimony and viewing the witnesses.

*Blackburn,* 630 F.2d at 1109-10 (citations omitted).

We conclude that the district court erred in rejecting the magistrate's credibility-based fact findings without conducting its own evidentiary hearing.  We believe that Jordan's testimony from the civil trial was not sufficiently telling for the district court to reject the magistrate's fact findings without conducting its own hearing.[2]  Further, as discussed below, we can find no alternative

---

[2]The testimony from the civil trial can be read to suggest that Jordan waived his right to testify on the advice of counsel, but it is not conclusive.  At one point in the civil trial he testified as follows:

> Q: Why didn't you testify a year ago [at the criminal trial]?
>
> A: I—It didn't seem necessary to—to testify.  It—I—I had my—the trial was by advisement of my attorneys;  and, they didn't think it was necessary that I even testify.
>
> Q: But you made that decision also;  did you not?
>
> A: Did I make the decision?
>
> Q: Yes, sir.
>
> A: I took advisement and made the decision.

ground for affirming the district court's decision.  Consistent with *Blackburn,* therefore, we remand the case for further proceedings.

B. *The Effect of Failure to Object*

Neither Jordan nor his counsel made a record in the state trial of Jordan's desire to testify.  In similar circumstances some courts have concluded that the defendant waived his right to testify.[3]  We do not believe that a defendant's failure to make a record of his desire to testify against his counsel's wishes is always fatal.  Unlike many trial errors asserted in habeas proceedings, this alleged error by its very nature is one where the defendant and his lawyer are necessarily at odds with each other. We think it unrealistic to expect that defense counsel will always bring this attorney-client dispute to the attention of the trial

---

However, shortly thereafter, he offered the following testimony:

> Q: Mr. Jordan, a year ago you exercised your right and you chose not to testify in that case when you were charged with rape in the criminal trial;  is that correct?

> A: No.  No.  You said I chose.

> Q: Yes, sir.

> A: No, I didn't;  I didn't choose.  I was working, you know, on the advisement of my attorneys.

[3]*E.g., United States v. Edwards,* 897 F.2d 445, 447 (9th Cir.), *cert. denied,* 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990);  *United States v. Martinez,* 883 F.2d 750, 760 (9th Cir.1989), *vacated on other grounds,* 928 F.2d 1470 (9th Cir.), *cert. denied,* 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991);  *Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *United States v. Bernloehr,* 833 F.2d 749, 752 (8th Cir.1987).

7

court.  Likewise, we believe that a rule requiring the defendant

personally to make such a record is inappropriate.  We agree with

the reasoning of the panel opinion in *Teague:*

> The defendant may not realize until after the jury has retired
> to deliberate that the proper time for his testimony has
> passed.  Furthermore, once a defendant elects to take
> advantage of his right to counsel, he is told that all further
> communications with the court and the prosecutor should be
> made through his attorney.  Aside from any testimony he may
> give at pre-trial hearings or during trial, a defendant is not
> permitted to speak directly to the court.  In fact, in the
> interests of decorum and the smooth administration of justice,
> defendants who speak out of turn at their own trials are
> quickly reprimanded, and sometimes banned from the courtroom,
> by the court.  It would be anomalous to consider the right to
> counsel of fundamental importance because of the common lack
> of understanding of the trial process by defendants, and to
> require a defendant to rely on his attorney to be his sole
> spokesperson in the courtroom, while at the same time holding
> that by failing to speak out at the proper time a defendant
> has made a knowing, voluntary and intelligent waiver of a
> personal right of fundamental importance such as the right to
> testify.

*Teague,* 908 F.2d at 759-60 (footnote omitted).  The uncertainty in

this area could be avoided if counsel would obtain a signed

statement from the defendant or if trial courts would conduct a

colloquy and obtain, outside of the jury's hearing, a statement on

the record from the non-testifying defendant that he is aware of

his right to testify and has chosen voluntarily to waive that

right.[4]

---

[4]The courts are not in uniform agreement on whether such a colloquy from the trial court is advisable.  State and federal courts widely have held that such a colloquy is not required. *See Martinez,* 883 F.2d at 757.  The majority opinion in *Martinez* argues that such a court inquiry not only is not required, but is an inappropriate intrusion into the attorney-client relationship. *Id.  See also Siciliano,* 834 F.2d at 30 (Breyer, J.) ("To require the trial court to follow a special procedure, explicitly telling defendant about, and securing an explicit waiver of, a privilege *to* testify (whether administered within or outside the jury's

We do not mean to suggest that a defendant's failure to object in the state court proceeding is entirely irrelevant. That silence may itself be evidence of voluntary waiver of the right to testify. In the absence of evidence in the state court record of the defendant's wish to testify, we think it appropriate for the habeas court to presume that the defendant acquiesced in his counsel's advice or otherwise made a voluntary choice not to testify. We hold only that such silence does not raise an irrebuttable presumption of waiver. Here the magistrate as fact-finder carefully considered the live evidence presented and the credibility of the witnesses, and we cannot say on this record that Jordan waived his right to testify.

C. *Whether the Constitutional Error, if Any, Was Harmless*

The State argues in the alternative that even if Jordan's right to testify was denied, such a constitutional violation was harmless error which does not justify habeas corpus relief. In *Brecht v. Abrahamson,* --- U.S. ----, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court addressed the standard for determining, in a federal habeas corpus proceeding, whether a conviction must be set aside because of constitutional error. The constitutional error in that case was a *Doyle* error which occurred when the prosecution made reference to the defendant's post-*Miranda*

---

hearing), could inappropriately influence the defendant to waive his constitutional right *not* to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right."). In contrast, the dissent in *Teague* would require courts to establish on the trial record a waiver of the defendant's right to testify. *Teague,* 953 F.2d at 1544 (Clark, J., dissenting).

silence. *Id.* at ----, 113 S.Ct. at 1713-14. The Court discussed in general the distinction between "trial errors" which are amenable to harmless-error analysis and "structural defects," such as denial of the right to counsel, which require automatic reversal of the conviction "because they infect the entire trial process." *Id.* at ----, 113 S.Ct. at 1717. The Court held that the standard for determining whether habeas relief must be granted is whether the *Doyle* error " "had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at ----, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). This standard must now be followed in habeas proceedings, in lieu of the "harmless beyond a reasonable doubt" standard announced in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and applied in direct appeals. Since *Brecht,* our court and others have held generally that the *Brecht/Kotteakos* standard applies in habeas proceedings where the court must decide whether a constitutional trial error requires reversal of the conviction. *E.g., Kyles v. Whitley,* 5 F.3d 806, 807 (5th Cir.1993) (holding that in habeas proceedings *Brecht* standard "controls all trial, as distinguished from structural, errors"); *Shaw v. Collins,* 5 F.3d 128, 132 (5th Cir.1993); *Lowery v. Collins,* 996 F.2d 770, 772 (5th Cir.1993).

Justice Stevens, concurring in *Brecht,* explained that the *Kotteakos* standard "places the burden on prosecutors to explain why those errors were harmless" and "requires a habeas court to review the entire record *de novo* in determining whether the error

influenced the jury's deliberations."  --- U.S. at ----, 113 S.Ct. at 1723.  As we noted in *Lowery:*

> Justice Stevens, in his concurring opinion in *Brecht,* wrote to explicate the *Kotteakos* standard and to "emphasize that the standard is appropriately demanding."  Under *Kotteakos,* "the burden of sustaining a verdict by demonstrating that the error was harmless rests on the prosecution" unless that "error is merely "technical' "—which a constitutional violation could never be.

996 F.2d at 773 (footnote omitted) (quoting *Brecht,* --- U.S. at ---, 113 S.Ct. at 1723-24 (Stevens, J., concurring)).

We conclude that this case involves a trial error and so the *Brecht* standard should govern.[5]  If a constitutional error occurred, we would hold based on the record before us that it "had substantial or injurious effect or influence in determining the jury's verdict."  The burden was on the State to demonstrate otherwise, and it did not meet this burden.  This case in not one

---

[5]*But see Wright v. Estelle,* 572 F.2d 1071, 1080-82 (5th Cir.) (en banc) (Godbold, J., dissenting) (suggesting that denial of defendant's right to testify should be reversible per se), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). We also note that when the Eleventh Circuit decided the *Teague* case en banc, it adopted an approach different from the one we choose to follow.  Although the *Teague* court held that "a criminal defendant has a fundamental constitutional right to testify on his behalf, that this right is personal to the defendant, and that the right cannot be waived by defense counsel," 953 F.2d at 1535, it concluded that a claim that the defendant was denied his right to testify should be reviewed as an ineffective assistance of counsel claim under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 953 F.2d at 1534.  We cannot agree with this approach.  First, we believe that the right of a defendant to testify on his own behalf is a fundamental constitutional right entirely separate from his right to counsel.  Second, in our view, treating a claimed denial of the defendant's right to testify as an ineffective assistance of counsel claim ignores recognition of the right as one personal to the defendant which can never be waived by counsel, competent or not.

where the evidence of guilt was so overwhelming that we can say that the constitutional error, if any, was harmless under the *Brecht* standard. Numerous witnesses (albeit relatives) testified at trial in support of Jordan's alibi—that he was in or on his way to Dallas at the time of the rape. G.R. did not identify Jordan as the rapist until the summer of 1986, some two years after she had been shown photographs of Jordan and other suspects on several occasions. Jordan claims that her incentive for identifying him as the rapist was financial. She obtained counsel to bring a civil suit against Jordan in the summer or fall of 1986, and ultimately won a large judgment against Jordan. Jordan testified at the civil trial, and points out that even with the lower burden of proof in that proceeding and even though the fact of his rape conviction was brought out at the civil trial, the jury was split ten to two on the verdict.[6] Jordan offered plausible reasons that his own testimony would have helped his case. Further, his lawyer's reason for not calling him seems implausible. The child molestation conviction was more than ten years old. Mississippi Rule of Evidence 609(b) is the same as FED.R.EVID. 609(b), and provides that evidence of a conviction more than ten years old is not admissible unless "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect," and "the proponent gives to the adverse party sufficient

---

[6]The magistrate observed: "If two jurors would vote in John Jordan's favor under a preponderance of the evidence standard while knowing of his conviction for rape, the undersigned cannot conclude that the violation of his right to testify at his criminal trial was harmless beyond a reasonable doubt."

12

advance written notice of intent to use such evidence...."  Our review of the state and federal court records indicate that these requirements were not met.

## CONCLUSION

We reverse the district court's order denying the habeas corpus petition, and remand the case for further consideration consistent with this opinion.

REVERSED and REMANDED.