UNITED STATES of America

v.

Lee Andrew WILLIAMS

No. CR. 392CR92WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 30, 1998.

904

Al Jernigan, Assistant United States Attorney, Jackson, MS, for Plaintiff.

Lee Andrew Williams, Pensacola, FL, for Defendant.

## *ORDER*

WINGATE, District Judge.

Before the court is the petition of Lee Andrew Williams (hereinafter "Williams") for habeas corpus relief pursuant to Title 28 U.S.C. § 2255.[1] This petition raises several issues relating to Williams' primary claim that his trial and appellate counsel offered him ineffective assistance. Williams contends that his trial counsel erred when he refused to allow Williams to testify at trial; that his appellate counsel failed to raise on appeal that Williams was denied the right to testify; and that this court failed to inquire whether Williams

---

1. Title 28 U.S.C. § 2255 provides in pertinent part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence. A motion for such relief may be made at any time."

wanted to testify at trial.[2] Williams also contends that his trial counsel's courtroom strategy was defective. According to Williams, trial counsel permitted a government agent to testify about Williams' criminal record without objection and responded to an audio tape containing Williams' voice in a manner which was ineffective and prejudicial. According to Williams, this audio tape provided crucial evidence which led to his conviction, and trial counsel should have responded to the audio tape in some other way.

Williams further contends that he was entitled to have the jury specially instructed with regard to the suspect credibility of government-paid witnesses.

Finally, Williams says that there is new evidence which should persuade this court to set aside his conviction.

## I. BACKGROUND

■ Williams was arrested and convicted of conspiracy to possess with intent to distribute cocaine in connection with a "sting" operation conducted by the Federal Bureau of Investigation. Also arrested and convicted in connection with the sting operation were Roy Bradfield, Michael Roberts and Gregory Robertson. Williams and Roy Bradfield appealed their respective convictions to the United States Court of Appeals for the Fifth Circuit. Williams' conviction was affirmed, but the conviction of Roy Bradfield was reversed based in part on the failure of the trial court to give the jury an instruction on evaluating the credibility of government-paid informants. *See United States v. Bradfield, et al.,* 113 F.3d 515 (5th Cir. 1997). The Fifth Circuit reasoned that the government had relied almost exclusively

on the testimony of paid informant John Chancey to place Bradfield at the crime scene and to establish his part in the conspiracy. Thus, said the Court, it was "plain error" not to instruct the jury on behalf of Roy Bradfield about the suspect credibility of paid informants. However, this opinion soon was withdrawn and Bradfield's conviction was reversed solely on the ground that the evidence supported giving an entrapment instruction to the jury on Bradfield's behalf, and inasmuch as the trial court did not give such an instruction, Bradfield's conviction would have to be reversed. *See United States v. Bradfield,* 113 F.3d 515 (5th Cir.1997). Consequently, since Bradfield's conviction was being reversed on the entrapment instruction issue, the Fifth Circuit chose not to address whether it was error for the trial court not to instruct the jury on Bradfield's behalf concerning the suspect credibility of John Chancey's testimony. The "plain error" language as it previously had been applied to Bradfield's conviction was eliminated from the subsequent opinion, and Williams' conviction once again was affirmed. In both of the above-cited opinions, the Fifth Circuit discussed reversal only with regard to Roy Bradfield's conviction. The Fifth Circuit never considered reversing Williams' conviction in either of the above-cited opinions either for failure to instruct the jury on entrapment or on the suspect credibility of paid informants. Now, Williams seeks to set aside his conviction and sentence pursuant to Title 28 U.S.C. § 2255, claiming that counsel rendered ineffective assistance and failed to function as the counsel guaranteed by the Sixth Amendment of the United States Constitution.[3]

---

2. *See United States v. Teague,* 953 F.2d 1525, 1534 (11th Cir.1992), stating that, "[b]ecause it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strick-*

land v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."

3. Amendment Six to the United States Constitution, which provides in part that, "the accused shall ... have the Assistance of Counsel for his defence," guarantees a defendant in a federal criminal trial the right to "counsel reasonably likely to render and rendering reasonably effective assistance." *United States v.*

## II. APPLICABLE LAW

### A. Standard for Determining Ineffective Assistance

■ The proper standard for evaluating the effectiveness of counsel is reasonable performance under prevailing professional norms.[4] *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court established a two-prong test for resolving ineffective assistance claims. Under that test, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.,* 104 S.Ct. at 2064. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.,* 104 S.Ct. at 2071.

■ The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Jernigan v. Collins,* 980 F.2d 292, 296 (5th Cir.1992), *cert. denied,* 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Martin v. Maggio,* 711 F.2d 1273, 1279 (5th Cir.1983), *cert. denied,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984). A petitioner's conclusory and speculative allegations will not suffice in this regard. *Kinnamon v. Scott,* 40 F.3d 731, 734–35 (5th Cir.), *cert. denied,* 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994); *Barnard v. Collins,* 958 F.2d 634, 643 n. 11 (5th Cir. 1992), *cert. denied,* 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993).

To establish deficient performance of counsel, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment" *Hughes,* 635 F.2d 449, 451 (5th Cir.1981), citing *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *modified,* 289 F.2d 928, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

of the United States Constitution. *Id.,* 104 S.Ct. at 2064. In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effect of hindsight." *Id.,* 104 S.Ct. at 2065. The petitioner must show a reasonable probability "that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 104 S.Ct. at 2068. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* However, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Thus, in addition to establishing a reasonable probability of a different result, a petitioner must demonstrate that counsel's deficient performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott,* 62 F.3d 673, 685 (5th Cir.1995), *cert. denied,* 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), citing *Lockhart,* 113 S.Ct. at 844.

### B. Desire to Testify at Trial

■ Williams says he was not permitted to testify in his own behalf at trial. According to Williams, trial counsel would not permit him to testify; the court made no inquiry into this matter; and appellate counsel failed to raise the issue on appeal.

■■ A criminal defendant has a fundamental constitutional right to testify on his own behalf. *Jordan v. Hargett,* 34 F.3d 310, 312 (5th Cir.1994), citing *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987). This right is granted to the defendant personally and not to his counsel. *Id.,* 34 F.3d at 312,

4. In *Strickland v. Washington,* the United States Supreme Court noted that "[p]revailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable" representation by an attorney.

citing *Rock,* 107 S.Ct. at 2709, and *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.) (on rehearing en banc) ("We now reaffirm that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

Of course, a defendant may waive his right to testify and frequently does so on the advice of counsel. There is no violation of the right to testify if a defendant acquiesced during trial to his attorney's recommendation that he not testify and later decided that he should have testified. Instead, a violation of this right only occurs if the final decision that the defendant will not testify is made against his will. So, if waiver of the right to testify is asserted to counter the defendant's claim that he was denied the right to testify on his own behalf, this court must determine whether the defendant made a knowing, voluntary and intelligent waiver of his right to testify. *See United States v. Teague,* 908 F.2d 752, 759 (11th Cir.1990), *rehearing granted,* 953 F.2d 1525 (11th Cir.), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

In the instant case, the affidavit of Williams' trial counsel says that the decision whether to testify was left to Williams alone. According to trial counsel, Williams stated that he did not want to testify if Roy Bradfield was not going to testify. Williams' appellate counsel states in his affidavit that Williams waived his right to testify on the record. Thus, there was no such issue to be raised on appeal. Indeed, this court conducted a colloquy to ask Williams if he wanted to testify on his own behalf (see page 403 of the trial transcript). Williams assured this court that he had discussed the matter with trial counsel and had decided not to testify. Additionally, trial counsel stated that the decision whether to testify was left to Williams alone. In view of Williams' statement contained in the trial transcript, his assertion that counsel would not permit him to testify is simply not true. The final decision not to testify was made willingly, intelligently and knowingly by Williams himself as his colloquy with the court clearly shows. This was not a decision made against his will.

In *Jordan v. Hargett,* the Fifth Circuit noted that any uncertainty in this area could be avoided if counsel would obtain a signed statement from the defendant or if the trial court would conduct a colloquy and obtain, outside of the jury's hearing, a statement on the record from the non-testifying defendant that he is aware of his right to testify and has chosen voluntarily to waive that right. *Id.* at 315. In the instant case, such a colloquy was conducted and a statement on the record was obtained. Therefore, Williams' assertions that trial counsel would not allow him to testify; that appellate counsel did not raise this issue on appeal; and that this court failed to conduct a colloquy on the matter are all specious and wholly without merit. There is no basis for granting habeas corpus relief based on the assertion that Williams was not permitted to testify on his own behalf at trial.

### C. *Trial Counsel's Strategy*

As previously noted, Williams complains that his trial counsel's courtroom strategy was defective. First, Williams complains that defense counsel permitted a government agent to testify about Williams' criminal record without objection. The record does not support Williams' account of the circumstances. Williams' trial counsel did not sit by and allow a government witness to go into Williams' prior criminal record. Instead, it was trial counsel who asked a government witness whether Williams had any previous drug convictions. The apparent basis for this question was to establish for the jury that Williams had no prior drug conviction and, thus, would either be less likely to participate in a drug-related

crime, or more likely to walk away from or abandon any criminal activity. However, instead of agreeing that Williams had no previous drug convictions, the government's witness replied that Williams "had been involved in narcotics previously." Trial counsel then chose not to pursue the matter with further questioning.

██ Generally, defense counsel's trial strategy, which includes asking or refraining from asking certain questions of witnesses, does not reach constitutional proportions. *See Lovett v. State of Florida,* 627 F.2d 706 (5th Cir.1980); *United States v. Johnson,* 615 F.2d 1125, 1127 (5th Cir. 1980). Moreover, in *Daniels v. Maggio,* 669 F.2d 1075, 1079 (5th Cir.), *cert. denied,* 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982), the Fifth Circuit stated that "a conscious and informed decision on trial tactics cannot be the basis for constitutionally ineffective representation unless it is so ill chosen that it permeates the entire trial with obvious unfairness." This court finds no basis for concluding that trial counsel's question was ill-chosen. Trial counsel ostensibly saw valuable advantage in establishing that Williams had no previous drug convictions in order to bolster the theory that Williams abandoned the enterprise in question and did not engage in criminal activity. Williams does not show what obvious unfairness he suffered from this approach. Instead, he simply presumes that, had counsel utilized a different defensive strategy, the result of the proceedings would have been different if trial counsel had not asked the question. Williams' conclusory and speculative allegation that some other course of action by trial counsel would have brought about a different result simply will not suffice to show constitutionally ineffective assistance of counsel. *See Kinnamon v. Scott,* 40 F.3d 731, 734–35 (5th Cir.), *cert. denied,* 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994). Williams' argument presents nothing more than the distorting effect of hindsight which this court, pursuant to

*Strickland,* must make every effort to eliminate. *Id.,* 104 S.Ct. at 2065.

██ Secondly, Williams complains that trial counsel erred by pursuing the theory that Williams abandoned the criminal endeavor before it bore fruit (the "he walked away" theory). An audio tape presented by the prosecution and played for the jury contained discussions between Williams and others in a restroom regarding certain details of a drug purchase. Trial counsel used the audio tape to place an exculpating spin on Williams' comments, arguing that, although Williams agreed on the audio tape to bring a bag of money to a motel room where the government-paid informant would be waiting, Williams was not the person who ultimately brought the money for the informant's inspection. Trial counsel succeeded in getting the paid informant John Chancey to admit that Williams was not the person who brought the money. Thus, the jury could have inferred, but did not, that Williams took no steps in furtherance of the criminal conspiracy and abandoned the project.

██ The court finds that Williams has failed to demonstrate any deficiency in counsel's choice of trial strategy in response to the audio tape. Williams must overcome the presumption that his trial counsel's defensive strategy was inside the wide range of reasonable professional assistance permitted under the *Strickland* standard. *Livingston v. Johnson,* 107 F.3d 297, 305 (5th Cir.1997). This court must "strongly presume that trial counsel's conduct was the product of reasoned trial strategy." *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir.1992), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993)

### D. *Failure to Instruct on Credibility of Paid Informant*

██ Williams says that he was entitled to have the jury specially instructed at trial with regard to the suspect credibility of the testimony of John Chancey because

Chancey was an informant paid by the government. As previously noted, in *United States v. Bradfield, et al.,* 113 F.3d 515 (5th Cir.1997), the Fifth Circuit's first opinion on the direct appeals of Williams and Roy Bradfield, Bradfield's conviction was reversed because the Court reasoned that where the government relies almost exclusively on the testimony of a paid informant to place a defendant at the crime scene and to establish his part in the conspiracy, the special instruction now sought by Williams had to be given. However, the Fifth Circuit withdrew its original opinion and substituted a subsequent opinion which does not address this issue. Moreover, neither of the Fifth Circuit's two opinions finds Williams to be entitled to the suspect credibility instruction.

In *United States v. Bradfield,* 113 F.3d 515 (5th Cir.1997), the Fifth Circuit's subsequent opinion on the direct appeals of Williams and Roy Bradfield, the Court noted that the issue of whether to instruct a jury regarding the credibility of paid informants already was well-developed in *United States v. Cervantes–Pacheco,* 826 F.2d 310 (5th Cir.1987) (en banc), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988), and its progeny, including *United States v. Bermea,* 30 F.3d 1539 (5th Cir.1994), *cert. denied,* 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995). These cases hold that when the evidence against a defendant at trial consists largely of paid-informant testimony, the trial court "should give" a special instruction pointing out the suspect credibility of the paid witness. For instance, in *Bermea,* all the evidence against the defendant Garcia was given by a paid informant and by two other witnesses who had been promised leniency in exchange for their testimony. The Fifth Circuit in *Bermea*

noted approvingly that in the circumstances of Garcia's case a cautionary instruction regarding the evaluation of the witnesses' credibility was and should have been given. *Id.* at 1551–52.

In the instant case, the evidence against Roy Bradfield was supplied in large part, if not entirely, by the paid informant John Chancey. Unlike the evidence against Roy Bradfield however, the evidence against Williams was provided by two credible law enforcement agents who observed Williams engaging in surveillance while parked at a highway exit very near the crime scene. David Langlois, a technician with the Federal Bureau of Investigation, testified that he saw Williams posted as a "lookout" near the site where the sting operation in question transpired. Langlois was relieved from his watch by Mike Wallace of the Yazoo City, Mississippi, police department. Wallace corroborated the testimony of Langlois that Williams was present on the day in question and was performing surveillance duties in furtherance of the conspiracy. Although the paid informant John Chancey referred to Williams in his testimony, stating that he saw Williams for the first time on the day of the sting operation, the informant's testimony failed to ascribe any particular role in the conspiracy to Williams.[5] That role was established by the two aforesaid law enforcement officers who were not paid witnesses and whose testimony did not require the credibility instruction now sought by Williams.

Finally, the testimony of the two law enforcement officers supplied all the elements of the crime with which Williams was charged. The elements of a drug conspiracy are: "(1) the existence of an agreement between two or more persons to violate the narcotics law; (2) the defen-

---

**5.** For instance, the informant John Chancey stated that he saw Lee Andrew Williams with Roy Bradfield on the day in question, but said nothing specific regarding what Williams might have done in furtherance of the crime. A tape recording made by Chancey reveals Williams' voice in conversation with Brad-

field and Chancey about showing Chancey a bag of money in the amount of at least twenty-eight thousand dollars. However, Chancey testified that it was not Williams who went and got the money or who brought the money to show to him.

dant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *United States v. Gonzalez,* 76 F.3d 1339, 1346 (5th Cir.1996). "A jury may infer the elements of a conspiracy conviction from circumstantial evidence: an agreement to violate narcotics law may be inferred from concert of action. Knowledge of the conspiracy may be inferred from a collection of circumstances." *United States v. Leal,* 74 F.3d 600, 606 (5th Cir.1996). This court finds that the evidence against Williams was more than sufficient to establish his knowledge of the drug deal and his agreement to participate in the deal, thereby justifying the jury's verdict against him.

Therefore, this court finds no basis for the contention that Williams' counsel was ineffective by not seeking to instruct the jury with regard to the suspect credibility of paid witnesses.

### E. *The Matter of "New Evidence"*

██ Finally, Williams seeks an evidentiary hearing to present "new evidence" which, according to Williams, would have exonerated him if it had been introduced at trial. This court construes Williams' request to be one for a new trial based on the discovery of new evidence. The first item of evidence is a sales receipt and pick-up slip which could have been presented by and through Williams at trial had he chosen to testify. This document purports to lend credibility to Williams' claim that he was only in town on the day in question to pick up furniture for one Joyce Sawyer. The second item is an affidavit given by Roy Bradfield which purports to exonerate Williams. This document was presented at Williams' sentencing where this court found it to lack credibility.

██ Motions for new trial based on newly discovered evidence are generally disfavored by the courts and are viewed with caution. *United States v. Nixon,* 881 F.2d 1305, 1311 (5th Cir.1989), citing *United States v. Adi,* 759 F.2d 404, 407 (5th

Cir.1985). The district court's denial of such a motion will only be disturbed for a clear abuse of discretion. *Id.,* citing *United States v. Vergara,* 714 F.2d 21, 22 (5th Cir.1983). According to the general standards set forth by the United States Court of Appeals for the Fifth Circuit, a habeas corpus petitioner's motion for new trial should be granted only if: (1) the new evidence was discovered after trial; (2) the failure to learn of the evidence was not due to petitioner's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) a new trial would probably produce a new result. *United States v. Nixon,* at 1311, citing *United States v. Rodriguez,* 437 F.2d 940 (5th Cir.1971).

The sales receipt and pick-up order was known to Williams before and during his trial; thus, it clearly fails to meet to first of the five aforesaid factors pertaining to newly discovered evidence. Furthermore, it was with full knowledge of the existence of this document and any exculpating theory it might have supported that Williams chose not to present evidence on his own behalf at trial.

Moreover, this court cannot conclude that Williams' mere possession of this sales receipt is proof of anything, nor does it contradict the statements of credible witnesses who saw Williams acting as a lookout on the day in question. A jury reasonably could conclude that Williams planned to pick up Joyce Sawyer's furniture after the drug deal was completed. So, it does not follow that the presentation of this document at a new trial necessarily would bring about a new result.

The other item of "new evidence" is a post-trial affidavit submitted by Roy Bradfield which purports to exonerate Williams. This court already has had the opportunity to review the Bradfield affidavit at Williams' sentencing, there finding that the bare affidavit, with nothing more, lacked credibility. Williams presents nothing to persuade this court to change its prior assessment of this document.

### III. *CONCLUSION*

Therefore, based on the foregoing, this court finds no basis for awarding Lee Andrew Williams habeas corpus relief pursuant to Title 28 U.S.C. § 2255 and his motion to vacate or to set aside his conviction and sentence is hereby denied.