IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-2341

---

RAYMOND CARL KINNAMON,

Petitioner-Appellant,

versus

WAYNE SCOTT, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

( September 15, 1994)

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is a death penalty case from Texas. Raymond Carl Kinnamon appeals dismissal of his petition for writ of habeas corpus and denial of a certificate of probable cause by the United States District Court for the Southern District of Texas. This is Kinnamon's first federal petition and he attacks his conviction for capital murder and sentence of death on six grounds. We refuse to issue a certificate of probable cause and dismiss the appeal.

I

On July 25, 1985 a jury in Harris County, Texas, convicted Kinnamon of the murder of Ronald Charles Longmire in the course of an armed robbery of a bar and its patrons. The jury answered

affirmatively the three questions asked in the sentencing proceeding and on July 30, 1985 the trial court sentenced Kinnamon to death. The Texas Court of Criminal Appeals affirmed the conviction on April 18, 1990. Kinnamon v. State, 791 S.W.2d 84 (Tex. Crim. App. 1990). Instead of filing a petition for certiorari, Kinnamon filed an application for writ of habeas corpus in the state trial court. Without a hearing, the state trial court entered findings of fact and conclusions of law and the Texas Court of Criminal Appeals thereafter denied relief.

The Texas Court of Criminal Appeals set out the facts of the offense:

> On Monday evening, December 11, 1984, [Kinnamon] was one of several patrons seated at the bar in N.J.'s Lounge in Houston. He had entered the bar several hours earlier, and, according to witnesses, sat alone, occasionally playing a video game mounted atop the bar. At one point he had a brief conversation with the bartender, Jeannie Marriott. After "last call" had been announced [Kinnamon] acted as if he was leaving with the other customers. Before exiting, he told Marriott that he had to use the restroom, turned and walked back across the lounge. When [Kinnamon] came out of the restroom a short time later, waitress Sharon Bryson, and a patron, Kenny Simmons, were seated at the bar and Marriott was cleaning up behind the counter. At that point, [Kinnamon], possessing a firearm, ordered the employees and remaining patrons, including Ronald Longmire, the decedent, to put their hands on the bar and refrain from looking at him. He ordered Marriott to take the money out of the cash register and place it in a bag. Since no bag was available, she used Bryson's purse. After [Kinnamon] took the money, he ordered everyone to proceed single file to the men's restroom. Ronald Longmire, the decedent, was apparently at the end of the line, with [Kinnamon] following. As the people were proceeding to the rest room, [Kinnamon] asked them for their jewelry. As they were trying to remove their rings and watches, [Kinnamon] asked Longmire "what is that in your pocket?" to which the decedent responded "nothing, just my driver's license." A shot was fired, then a second almost immediately thereafter. The record indicates that

2

the second shot entered the decedent's back from the left side at an angle. Longmire apparently fell to his knees. At this point, Sharon Bryson, the waitress, escaped through a rear exit, and in so doing activated a burglar alarm. The bartender, Jeannie Marriott, was pulled into the walk-in cooler by Kenny Simmons. About that time, a third shot was fired. Simmons later testified that while he and Marriott were in the cooler, someone attempted to enter from the outside by pulling on the door handle to the cooler. Meanwhile, Bryson fled to a nearby convenience store and telephoned the police.

Approximately ten minutes after the shooting, Marriott and Simmons came out of the cooler and saw Longmire wandering aimlessly through the bar, muttering incoherently and bleeding profusely from the gunshot wound. When the police arrived, Marriott directed them to Longmire, who by that time was dazed and seated on the floor in a corner. Longmire was rushed to the hospital and died a short time later.

[Kinnamon] was identified in a photo array by the eyewitnesses to the offense. Some two weeks later, he was apprehended at his Houston residence and placed under arrest.

Kinnamon v. State, 791 S.W.2d at 86-87.

II

Kinnamon contends that his counsel was ineffective in not requesting jury instructions on the lesser included offenses of murder and involuntary manslaughter. The Texas Court of Criminal Appeals held that "the evidence did not authorize the submission of a murder instruction on a lesser included offense . . ." 791 S.W.2d at 96-97. This court examined similar contentions in Cordova v. Lynaugh, 838 F.2d 764 (5th Cir. 1988). This court acknowledged that murder was a lesser included offense of capital murder, explaining: "The specific issue is whether a rational jury could have found that Cordova murdered Hernandez but that it was not in the course of the robbery." Id. at 769. No rational jury

3

could have simultaneously voted to convict Kinnamon of murder and acquit him of robbery. Indeed, that is not his argument, as we understand it. Rather, he argues that a rational jury could have concluded that he lacked the intent to kill and was only guilty of felony murder. The state replies that the evidence would not permit a rational jury to acquit of capital murder and convict of felony murder; thus, the trial court would have denied a request for any such instruction. As the state put it, "Given [that the fatal shot was a second shot] and the close proximity of Kinnamon's gun to the victim, the jury could only have found that Kinnamon had the conscious objective or desire to . . . cause the death of Longmire," citing Tex. Penal Code 6.03(a) (Vernon 1974) (internal quotation marks omitted).

The state habeas court pointed to the "overwhelming evidence showing that [Kinnamon] specifically intended to kill the deceased." It concluded that Kinnamon could not in any event meet the second prong of Strickland v. Washington, 466 U.S. 668, 687 (1984). We also are not persuaded that had counsel requested an instruction on the lesser offense of felony murder, the outcome would have been different. Kinnamon's lawyer, Guerinot, at the opening of his summation told the jury: "There is probably but one issue in this case, and there is only one, and you folks are going to decide it, and that is the issue of identity." Guerinot's co-counsel also told the jury: "Now, identity, as I said, is the issue." In rebuttal, the prosecution pointed out to the jury that

4

the defense rested on identity, not an absence of an intent to kill.

## III

Kinnamon contends that the jury charge allowed the jury to convict of capital murder without finding a specific intent to kill.  The jury, he argues, could have concluded that he intended to shoot but not to kill.  His trial objection to the charge made the point, but the Texas Court of Criminal Appeals rejected the contention on direct appeal.  That court agreed that capital murder is a "result of conduct" offense and "not only must an accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct.  The mere intent to pull the trigger of a firearm will not satisfy the statute".  791 S.W.2d at 88-89 (citation omitted).  The Court found, however, that read in the context of the full charge, the language "was irrelevant with respect to [Kinnamon's] culpable mental state."  791 S.W.2d at 89.  In another case, the Texas Court later overruled this holding, concluding that "it is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense."  Cook v. State ___ S.W.2d ___ (1994) (slip op. at 12).

Kinnamon argues that he should have the benefit of this change in Texas law and that this court ought to certify to the Texas Court of Criminal Appeals the "question" of whether he was harmed by the error.  He further argues that not according him the benefit

5

of the change deprives him of due process and is cruel and unusual punishment.  We are unpersuaded.

As a federal habeas court, our question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned."'"  Henderson v. Kibbe, 431 U.S. 145, 154-55 (1977) (citation omitted).  Looking at the charge as a whole and in the context of trial, including the arguments of counsel, there is no reasonable likelihood that the jury applied the construction in a constitutionally impermissible way.  The trial court instructed the jury (emphasis added):

> Before you are warranted in convicting the defendant, Raymond Carl Kinnamon, of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant, Raymond Carl Kinnamon, was engaged in the commission or attempted commission of the felony offense of robbery, if any, of Ronald Charles Longmire, as defined in this charge, but also that during the commission of the robbery or attempted commission thereof, if any, the defendant, Raymond Carl Kinnamon, shot Ronald Charles Longmire with a gun *with the intention of thereby causing his death*.  Unless you find from the evidence beyond a reasonable doubt that the defendant, Raymond Carl Kinnamon, on said occasion, (according to Tex. Crim. App., 791 S.W.2d at 88) *specifically intended to cause the death of Ronald Charles Longmire when he shot him with a gun*, if he did shoot him with a gun, you cannot convict him of the offense of capital murder.

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of December, 1984, in Harris County, Texas, the defendant, Raymond Carl Kinnamon, did then and there unlawfully while in the course of committing or attempting to commit the robbery of Ronald Charles Longmire *intentionally cause the death of Ronald Charles Longmire by shooting Ronald Charles Longmire with a gun*, then you will find the defendant guilty of capital murder.

The prosecutor did not attempt to exploit any uncertainty in the charge. Significantly, as we explained, Kinnamon's contention at the guilt phase was that the state had arrested the wrong man-- the issue was identity. There was no error of constitutional magnitude.

IV

Kinnamon contended on direct appeal that the prosecutor misstated the difference between "intentional" and "deliberate" in its use of use of hypotheticals in voir dire. The Texas Court of Criminal Appeals held that Kinnamon had not preserved the error for appeal because he had not used all his preemptory challenges and had not requested an additional one. Kinnamon unsuccessfully argued to the district court that the procedural bar was not applicable. He adds here the alternative that counsel was ineffective in not preserving the error.

We are asked to review the state law question presented by the decision to apply the bar to these facts--that the Texas courts erred in holding that misleading statements were subject to the requirement that preemptory challenges be exhausted. There are substantial reasons why we should not do so, but we need not rest here.

The effort to show legal cause to escape the procedural bar-- counsel's ineffectiveness--was not made in the federal trial court and so we will not listen. Even if we were to do so, it is apparent that the tactical choices behind a decision to exhaust challenges are barren ground indeed for second-guessing counsel.

7

Finally, the second prong of Strickland, again, is insurmountable, given the focus at trial upon identity. Relatedly, we find nothing in the trial court's rulings at voir dire or elsewhere that impeded Kinnamon's ability to defend on the basis of an absence of intent to kill.

V

Kinnamon argues that allowing the jury to consider in the sentencing phase evidence of other robberies committed after the charged offense denied him due process and equal protection. This contention is contrary to settled law of this circuit, and this panel lacks the authority to change it. Milton v. Procunier, 744 F.2d. 1091, 1097 (5th Cir. 1984), cert. denied, 471 U.S. 1030 (1985).

VI

Kinnamon argues that under the Texas sentencing procedures, the jury was unable to give effect to his mitigating evidence. He argues that the jury could have concluded that the victim resisted the robbery and with the escalating events his shooting of Longmire was born of panic, not malice. Such evidence, the argument continues, was relevant to the jury's assessment of moral culpability but the jury was offered no means to reflect its consideration in its verdict. We reject the contention. The jury could have given effect to such a view of the crime in its answer to the first question of whether the killing was deliberate, or in the second question of future dangerousness. Whether or not we add its answer to the question of whether Kinnamon acted in response to

8

any provocation by the victim, this "mitigating" evidence was within "the effective reach of the sentencer". <u>Graham v. Collins</u>, 113 S. Ct. 892, 902 (1993).

## VII

We reject Kinnamon's last point, attacking the admissibility of the in-court identifications of Kinnamon. He concedes that the district court applied the correct legal standard but urges that it gave insufficient weight to the accuracy of the witnesses' prior identifications of the accused, factor three of the five-factor test announced in <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972). Regardless of the weighing by the district court, each of the witnesses testified that the in-court identification rested on observations at the crime scene and not on pre-trial displays. We find no error.

The application for a certificate of probable cause is denied and this appeal is dismissed.