IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20911
_____


RAYMOND CARL KINNAMON,

                                    Petitioner-Appellee,

                        versus

WAYNE SCOTT, Director,
Texas Department of Criminal Justice,
Institutional Division,

                                    Respondent-Appellant.



_____

Appeal from the United States District Court
For the Southern District of Texas
_____

(December 11, 1994)


Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

                                I.

     Raymond Carl Kinnamon seeks a stay of execution from the
federal courts.  We rejected his request in his first habeas
petition on September 15, 1994.  Kinnamon v. Scott, 33 F.3d 462
(5th Cir. 1994).  Kinnamon filed no petition for rehearing, but, on
November 30, 1994, requested recall of the mandate, alternatively,
relief under Rule 60(b)(6), Fed. R. Civ. Proc.  We denied that
request on December 8, 1994.  At approximately the same time on
December 8, 1994, state trial judge Ted Poe, presiding judge of the
228th District Court, Harris County, Texas, denied Kinnamon's

motion for stay of execution, modification of execution date, and "reasonable" time to file a petition for post-conviction relief under Art. 11.07, Tex. R. Crim. Proc. Judge Poe entered 17 findings of fact. Judge Poe found, among other things, that on September 21, 1993, this court appointed Marsha Rutenbar to represent Kinnamon in his appeal before the Fifth Circuit; his brief was filed on April 19, 1994. Judge Poe also noted that on October 4, 1994, he appointed Marsha Rutenbar "to represent the defendant in any additional state habeas litigation . . ."; that he set the execution date 67 days hence. The court also noted that before the motion of December 6, Rutenbar had made no request for funds or filed any other document or pleading including an 11.07 petition; that Rutenbar had 18 months to investigate and prepare an 11.07 petition. For these reasons, Judge Poe denied the petition.

Kinnamon, through Rutenbar, on December 9, 1994, filed his petition for post-conviction relief pursuant to 11.07 Tex. Code Crim. Proc., and application for stay of execution and evidentiary hearing. Judge Poe denied that petition the afternoon of December 10, 1994 and proposed findings of fact and conclusions of law for the Texas Court of Criminal Appeals. That court, in turn, relying on the proposed findings and conclusions, denied relief. Kinnamon then filed his second federal habeas petition before United States District Court Judge Hoyt. Judge Hoyt granted the request for stay of execution and granted a right to proceed in forma pauperis. The state appeals and moves to vacate the stay of execution.

2

## II.

### (claim one)

Kinnamon asserts that the state trial judge denied him due process in defining the elements of intent in the jury instructions. This was the sole reason specified by the district court in its grant of a stay. We rejected this contention in Kinnamon's first federal habeas. <u>Kinnamon v. Scott</u>, 33 F.3d 462, 465-66 (5th Cir. 1994). We are unpersuaded that we should again examine this contention. Regardless, we remain unpersuaded of its merit. The district court did not explain its other reasons for granting a stay. We treat the claims seriatim.

We similarly rejected his claimed error in the prosecutor's use of hypotheticals in <u>voir</u> <u>dire</u>. The claimed error rests upon the related contention that the charge to the jury regarding intent was erroneous. The state concluded that the issue had not been properly preserved because Kinnamon's attorneys had failed to exhaust their allotted peremptory challenges. We rejected this contention in the first habeas petition because it was procedurally barred. We also explained that any asserted ineffectiveness of counsel in failing to meet the bar could not survive <u>Strickland</u>'s second prong; that the issue at trial was solely one of identity.

## III.

### (claim two)

Kinnamon next asserts constitutional error in his inability to argue to the jury in sentencing that if spared the death penalty Kinnamon would be required to serve a minimum of 20 calendar years

3

without good time before becoming eligible for parole.  Kinnamon rests this claim upon Simmons v. South Carolina, ___ U.S. ___, 114 S.Ct. 2187 (1994).  If we were to ignore the absence of a contemporaneous objection and the bar of Teague v. Lane, 489 U.S. 288 (1989), we would not extend Simmons beyond cases in which the sentencing alternative to death is life without parole.

## IV.

### (claims three through nine)

Kinnamon next brings claims of jury taint and prejudice.  He first contends that the state trial judge failed to conduct a hearing regarding the jury's exposure to "extraneous considerations concerning Kinnamon's access to the juror information sheets."  The contention is that juror Edwana Corley, after the court adjourned for lunch, approached the bench.  She expressed concern on her own behalf and other jurors that defendant had access to the long-form juror information sheets.  Judge Poe immediately informed counsel of her statement, but declined to conduct any further hearing regarding the incident.  According to the portions of the transcript attached to the state petition for habeas corpus, counsel had information recorded on legal size sheets regarding members of the jury, information used in voir dire.  Kinnamon was examining papers of a legal size; the jurors thought they were the information sheets used in voir dire.  Judge Poe refused to then conduct a hearing regarding any possible prejudice of jurors.  The trial judge observed to counsel "are you trying to tell me the jury

4

is supposed to sit over there with their eyes shut and not observe what is going on in the courtroom?"

That members of a jury in a capital murder case do not want the defendant examining information concerning their home addresses, phone numbers, etc. raises no concern of constitutional magnitude. As we understand it, Kinnamon's contention is bottomed on the assertion that this expression of concern signals some mid-trial determination by the jury of guilt or perhaps its caution about the defendant. We are unpersuaded. At that juncture, Kinnamon was accused by the state of a violent capital crime. Such a concern by a juror is consistent with an open mind regarding guilt. Finally, the state trial heard the testimony of Corley in a hearing on a motion for new trial. The juror denied that the occurrence had any effect on deliberations.

Relatedly, we find no constitutional error in the asserted "exparte contact with the juror Corley." The contact was in open court, at side bar, and was immediately disclosed to counsel. Regardless, she later testified in a hearing on the motion for new trial. Similarly, the claim that counsel was ineffective in pursuing the point is without basis.

Kinnamon next asserts a denial of due process from a claimed incident in which the jury was exposed to an "emotional and prejudicial outburst" by the victim's daughter. Relatedly, Kinnamon contends that his trial counsel was ineffective in failing to obtain limiting instructions, to move for mistrial or otherwise to develop the incident for appeal.

According to the affidavit of Kinnamon's sister, Sandra Crisler, at some juncture of the guilt phase of the trial only the jury, Kinnamon, and the prosecutor were in the courtroom. According to Crisler, the teenage daughter of the decedent entered the courtroom and began screaming that Kinnamon had killed her father. An unsigned "affidavit" of one of the jurors stated that during the guilt-innocence portion of the trial the daughter of the victim was "crying loudly and was very emotional." This juror, Katherine Duce, observed, "I do not remember whether or not she was saying something, but I do know she was crying loudly. Someone took her out of the courtroom. The incident was brief, but it was loud enough for all the jurors to hear."

Again, we are unpersuaded that there was any prejudicial error of constitutional magnitude. That the young girl was upset and angry at the person accused by the state as the murderer of her father communicated nothing new to the jury, if the incident occurred. The state habeas judge was not persuaded that it happened. The prosecutor, Doug Durham, swore that he had no recollection of it, and that for the jury to have been seated in the courtroom without the judge present would not have been permitted and was contrary to court practice.

Kinnamon next contends that two jurors prejudged the case and trial counsel was ineffective in not developing the matter earlier or preserving the point for direct appeal. Kinnamon's sister, Sandra Crisler, and his wife, Faye Valentine, claim to have overheard two jurors discussing the case in the women's restroom.

They claim by affidavit that one juror, unidentified, said to the other that she could not hear what had been said in court, drawing the response that it didn't matter because they already believed the defendant was guilty. The affidavit of Faye Valentine states that she "does not remember what Jerry Guernot [trial counsel] told Sandra" when they reported the encounter. Stan Schneider, counsel on direct appeal, swore in an affidavit that he spoke with trial counsel and no mention of this was made. Finally, the state trial judge in finding 42 stated:

> The Court finds unpersuasive the eleventh-hour affidavits of the applicant's sister, Sandra Crisler, and his wife, Faye Valentine, which state that, during the applicant's trial, they overheard two unidentified women jurors saying that they had already decided the applicant was guilty.

We find the state trial court's rejection of this evidence to be fairly supported by the record. There is no basis for concluding that Schneider was ineffective in not pursuing a matter that reasonable inquiry had not produced. Nor are we persuaded that the affidavits of Crisler and Valentine demonstrate fundamental unfairness in the trial.

V.

(claim ten)

Kinnamon contends that his trial counsel was ineffective. This claim is prefaced by counsel's claim that she has had an inadequate amount of time to investigate the issue of effective assistance of counsel. Rutenbar dates the opportunity for investigation from her appointment as state habeas counsel in

7

October 1994, asserting that she was only the federal appellate lawyer in the year preceding. She relatedly contends that she was unable to draw on the Texas Resource Center, because the state trial judge was hostile to the work of the Resource Center, pointing to excerpts of a broadcast of 60 Minutes quoting Judge Poe. The allegations of ineffectiveness are little more than conclusions. She asserts, for example, that counsel's argument to the jury that the sole issue was identity was constitutional error. Why this is so we are not told. How investigation may support this allegation we are not told. She points to the failure to offer medical evidence of the decedent's blood-alcohol content. Speculation continues that counsel failed to put Kinnamon's work history into evidence in the punishment phase of the trial, arguing that counsel was constitutionally ineffective in failing to point out that defendant had managed to stay out of prison for the past six years. The argument of ineffective trial counsel sums to a claim that there may be something there, but she has not had time to develop it.

## VI.

### (claim eleven)

She also asserts that Kinnamon was denied effective assistance of counsel on appeal. Again, the argument is speculation that something may have been developed had she had more time. We find no basis for granting habeas relief on such assertions.

VII

We end where we might well have begun--all of the allegations in this successive petition were readily available to Kinnamon when he first filed his federal petition. They are either matters of record or issues readily developed with reasonable investigation. McCleskey v. Zant, 111 S.Ct. 1454 (1991), contains no exceptions available to Kinnamon, nor are his two justifications for omitting these claims tenable. He first argues that he did not authorize the filing of his first federal petition. We have earlier rejected that contention. Second, he contends that under 21 U.S.C. § 848(q)(4)(B) he is entitled to appointment of counsel in federal habeas. See McFarland v. Scott, 114 S.Ct. 2568 (1994). Kinnamon at all meaningful times has had the benefit of counsel. It is by no means clear that when federal counsel is appointed they have no authority or responsibility to consider the development of new issues in the event of a second habeas round. Because these issues have not been fully developed, we have elected not to rest our decision solely on McCleskey grounds.

The stay of execution granted by the district court is vacated.