[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 25, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 04-15089
Non-Argument Calendar
_____

D. C. Docket No. 03-02702-CV-J-E

SHAEFFER M. COLEMAN,

Petitioner-Appellant,

versus

GILES, Warden,
ATTORNEY GENERAL OF STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 25, 2005)**

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Shaeffer Coleman, an Alabama state prisoner, appeals pro se the denial of his federal habeas corpus petition, 28 U.S.C. § 2254, on grounds that the district court improperly dismissed his claim that trial counsel was ineffective for failing to object to an outburst by the victim's grandmother and failing to move for a mistrial. Coleman filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996); therefore the provisions of that act govern his appeal. For the reasons set forth more fully below, we affirm.

Coleman, presently serving two consecutive life sentences for first degree rape and sodomy, filed this pro se petition for federal habeas corpus pursuant to 28 U.S.C. § 2254 alleging, inter alia, ineffective assistance of trial counsel for failing to object to an "emotional outburst by the victim's grandmother."

The state responded, arguing that Alabama state courts had addressed the merits of Coleman's claims and those decisions were neither contrary to nor involved an unreasonable application of federal law. With regard to his trial counsel's failure to object to the outburst of the victim's grandmother, the state argued that a state appellate court had found that Coleman failed to adequately plead his claim and that, therefore, Coleman failed to meet his burden of proving either ineffective assistance of counsel or prejudice, as required under Strickland v.

Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Relevant to Coleman's certificate of appealability ("COURT OF APPEALS"), the state's evidence showed that, at trial, the victim, who at the time of the offense was Coleman's 13-year-old step-daughter, testified that Coleman, some time prior to July 4, promised her that if she let Coleman "do something," Coleman would take her somewhere with her boyfriend. Coleman then took the victim into his bedroom and touched her breasts and her vagina. On another occasion, Coleman used his mouth and, eventually, penetrated the victim's vagina with his penis. The victim also testified that Coleman took her "to the woods" in a car and penetrated her anus with his penis. When she cried and told Coleman to stop, he hit her in the face. On another occasion, Coleman took the victim to a cemetery and again touched the victim's breasts and vagina before penetrating her anus with his penis. After this last incident, the victim told her mother that she didn't want to stay at home any longer, and informed her mother that Coleman was "messing with [her]." The victim identified Coleman as the perpetrator.

Near the end of the victim's testimony on cross-examination, the record showed that "a hysterical woman ran toward the defendant, was apprehended, and was escorted out of the courtroom." The court called for a 15-minute recess, and the trial then resumed. The court's jury instructions included the following

statement: "[y]ou should not permit sympathy, emotion or prejudice to influence your verdict one way or another in this case." Two hours into deliberations, the jury returned to the courtroom "deadlocked" and, after lunch, requested "the testimonies of the doctor and defendant" as well as the testimony of the victim. One of the reasons was that the jury was not "clear what [the witnesses] said in context." The court decided that "the easiest way to do that is just to replay the tapes," and in closed session, the jury reheard the testimony of three witnesses, including the victim and, presumably, also reheard the "outburst" of the woman who ran at Coleman during trial. After rehearing the testimony and deliberating for 25 minutes, the jury was still unable to reach a unanimous verdict. The following day, the jury convicted Coleman of sodomy and rape in the first degree.

On direct appeal, Coleman argued that "the trial court committed reversible error by failing to grant a mistrial following an outburst by a spectator during the course of the trial. This woman, who turned out to be the grandmother of the victim, began shouting very loudly at the defendant: 'That man's a snake.' This spectator repeated the same outburst and continued to make loud, verbal outbursts as a sheriff's deputy subdued her, lifted her up in the air, and carried her out of the courtroom." In a memorandum opinion, the Alabama Court of Criminal Appeals found that Coleman had failed to move for a mistrial, ask for a curative instruction,

4

or otherwise object regarding the outburst and, therefore, concluded that the issue was not preserved for appellate review.

Coleman then filed in Alabama state court a petition for relief from his conviction or sentence pursuant to Alabama Rule of Criminal Procedure 32, arguing inter alia, that he was denied effective assistance of counsel because his counsel failed to object to the outburst described supra. The state responded that Coleman had failed to show that his trial counsel was deficient under Strickland. The court issued a written order, finding that:

> Petitioner has failed to meet the requirements of Strickland v. Washington, 466 U.S. 668 (1984) in proving his allegations. Furthermore, the undersigned trial judge is the judge that presided over this Petitioner's jury trial. Based upon this Court's observations of defense counsel at trial and all phases leading to trial, the Petitioner was properly and effectively represented.

Coleman appealed the state trial court's decision. The Alabama Court of Criminal Appeals affirmed, finding that it (1) could not consider Coleman's factual assertions because they were presented in an unverified motion[1] and (2) Coleman's allegations were conclusory and general. Therefore, it found that the "circuit court properly denied relief on this ineffective-counsel claim."

The district court, upon review of the evidence, found that "[e]ach of the

---

[1] Coleman asserted that the actual words said by the grandmother were: "he's a snake, I'm going to kill him, he deserves to burn in hell for what he did to my baby."

claims of ineffective assistance of counsel were raised by the petitioner in his Rule 32 petition, and these claims were addressed on their merits in the state appellate court . . . and . . . found . . . to be without merit." Thus, it found that Coleman could:

> [O]btain relief on these claims only if he can establish that the . . . adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The district court then concluded that Coleman had not established what was required, and dismissed his petition. It found that the "Alabama Court of Appeals' adjudication of [Coleman's] claims . . . was not based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings."

Coleman appealed and we granted a COA on the following issue: "Whether trial counsel was ineffective for failing to object to an outburst by the victim's grandmother and move for a mistrial?"

On appeal, Coleman argues that his trial counsel was ineffective for failing to object to the "outburst" during his trial or to request an immediate curative instruction and polling of the jury to ensure that no member was affected by it. He argues that his counsel's failure to object permitted the jury to hear the outburst a

6

second time after it had reported being "deadlocked" and, had counsel objected, the outburst would have been stricken from the record and Coleman would have received a hung jury or a verdict of not guilty. Thus, he contends that he was denied his Sixth Amendment right to a fair trial by an impartial jury. He cites no federal cases in support of his arguments.

"Appellate review in a § 2254 proceeding is limited to the issues specified in the certificate of appealability." Diaz v. Sec'y for the Dept. of Corr., 362 F.3d 698, 702 (11th Cir. 2004). We review "[de novo] issues of law presented in a certificate of appealability." Medberry v. Crosby, 351 F.3d 1049, 1053 (11th Cir. 2003).

Pursuant to 28 U.S.C. § 2254:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The United States Supreme Court has held that "[a] state-court decision is contrary to this Court's clearly established precedents if it applies a rule that

7

contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." Brown v. Payton, ___ U.S. ___, 125 S.Ct. 1432, 1438, 161 L.Ed.2d 334 (2005). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." Id. at ___, 125 S.Ct. at 1439. An objectively unreasonable application of precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. See Diaz v. Sec'y for the Dept. of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005).

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 1512, 146 L.Ed.2d 389 (2000). Under Strickland, a defendant can only succeed on an ineffective assistance of counsel claim if he proves (1) his counsel was deficient, i.e., made errors so serious that counsel was not functioning as guaranteed under the Sixth Amendment, and (2) there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 694, 104 S.Ct. at 2068. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. at 693, 104 S.Ct. at 2067. Moreover, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. . . . he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

The district court found that the Alabama Court of Criminal Appeals' adjudication of Coleman's claims did not result in a decision contrary to, or involving an unreasonable application of, Strickland. The Court of Criminal Appeals had affirmed the trial court's conclusion that Coleman had failed to establish that his counsel was deficient under Strickland. A review of the trial record shows that the dismissal of Coleman's ineffective assistance claim was not objectively unreasonable.

First, Coleman has not pointed to any Supreme Court cases reaching a different result under indistinguishable facts. Second, in order to prevail under the

9

prejudice prong of <u>Strickland</u>, Coleman had to show a reasonable probability of a different outcome if, in fact, his counsel committed error. Assuming it was error for Coleman's counsel not to object to the outburst, request a curative instruction or poll the jury, or move for a mistrial, Coleman has not shown that, but for the error, there was a reasonable probability that the jury would not have convicted him.

Coleman's entire argument is that:

[H]ad his counsel objected and asked for a mistrial, there is a reasonable probability that the trial court would have granted a motion for mistrial or at the very least, the trial court would have given specific detailed instructions to disregard the outburst and polled the jury to make sure that none of them were affected and the outburst would not have been available on tape for the jury to hear that second time because it would have been stricken from the record. . . . [B]ecause of the jury's deadlocked position, [Coleman] would have gotten a hung jury or even an innocent verdict had [the jury] not been exposed to that tape recording of the outburst during their deliberations.

The victim testified at the trial to several occasions during which Coleman penetrated her vagina and anus with his penis. The outburst in question appears, from the record, to have been short and inconsequential, reading only that "a hysterical woman ran towards, the defendant, was apprehended, and escorted out of the courtroom." And while it is true that no immediate instruction was given to the jury to disregard the outburst, the jury instructions admonished the jurors to

10

avoid basing a decision of guilt on sympathy, emotion, or prejudice, and they were well informed of a defendant's presumed innocence. Jurors are presumed to follow the instructions they are given. See, e.g., Raulerson v. Wainwright, 753 F.2d 869, 872 (11th Cir. 1985).

Moreover, when the jury requested to rehear the testimony that Coleman argues contained the outburst in question, it stated that it wanted to clarify the context of witness statements. Even assuming that the grandmother of the victim said what Coleman asserts that she said, "he's a snake, I'm going to kill him, he deserves to burn in hell for what he did to my baby," the jury would have gleaned nothing new, nor been informed of anything other than the grandmother was understandably upset at the man the state accused of raping her granddaughter. See, e.g., Kinnamon v. Scott, 40 F.3d 731, 734 (5th Cir. 1994) (persuasive authority noting that, after the jury was exposed to an outburst by the daughter of a murder victim, the fact that "the young girl was upset and angry at the person accused by the state as the murderer of her father communicated nothing new to the jury."). Notably, the trial judge in Coleman's case, who was present throughout the trial, found no deficiency in the counsel's performance. As we have held in a similar context, "because the trial judge is in the best position to assess the prejudicial effect of an emotional outburst, the decision whether to grant

11

a mistrial lies within his sound discretion." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1302 (11th Cir. 2001).

Moreover, Coleman's argument regarding prejudice is purely speculative, as he argues that, but for the jury hearing the outburst a second time, there would have been a hung jury or a verdict of not guilty. Coleman makes much of the fact that the jury was deadlocked before hearing the tapes with the outburst. However, the record shows that the jury had only deliberated for two hours before informing judge that it was "deadlocked." After breaking for lunch, the jury requested to rehear the testimony of three witnesses, did not return to deliberations until several hours later, deliberated for 25 minutes, and returned to the court "unable to reach a unanimous verdict." The jury returned at 9 a.m. the next day and returned a unanimous verdict of guilty in 30 minutes. The fact that the jury was deadlocked before hearing the tapes and still unable to reach a unanimous verdict immediately after hearing the tapes runs contrary to Coleman's argument. In any event, the fact that it took a jury roughly three hours of total deliberation time to convict Coleman is not evidence of a reasonable probability that the outcome would have been different, especially in light of the fact that Coleman testified on his own behalf, denied committing the crime, and was found guilty anyway. See, e.g., United States v. Vazquez, 53 F.3d 1216, 1225 (11th Cir. 1995) ("when a defendant takes

12

the stand in a criminal case and exposes his demeanor to the jury, the jury may make adverse determinations about his credibility and reject his explanation as a complete fabrication.").

Finally, because Coleman must prove a reasonable probability of a different outcome, and the best that can be said about the outburst is that it may or may not have impacted the jury and may or may not have affected the outcome, Coleman cannot carry his burden of proof and persuasion under the prejudice prong of Strickland. Cf. United States v. Rodriguez, 398 F.3d 1292, 1299-1301 (11th Cir. 2005) (holding that, to succeed under plain error review of a Sixth Amendment right to a jury violation at sentencing, a defendant must show a "reasonable probability" (citing Strickland) of a different outcome, and where the effect of the error was uncertain, the defendant failed to meet that burden). The evidence does not demonstrate that the outburst had any effect on the factfinder's ultimate determination of guilt. See Strickland, 466 U.S. at 695, 104 S.Ct. at 2068-69.

In light of the foregoing, we conclude that the state courts' decisions rejecting Coleman's ineffective assistance of counsel claim for failing to object to the outburst at trial were not an unreasonable application of the law under Strickland. We, therefore, affirm.

**AFFIRMED.**